UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Case No. |
| Plaintiff/Respondent, | ) | 5:14-cr-119-JMH |
| | ) | |
| v. | ) | Civil Case No. |
| | ) | 5:17-cv-190-JMH-CJS |
| ANGELO JONES, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant/Petitioner. | ) | **& ORDER** |
| | ) | |

\*\*\*

Federal prisoner Angelo Jones, proceeding pro se, has filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody. [DE 76]. The United States has responded to the motion [DE 82] and Jones has replied [DE 86], making this matter ripe for review.

In this case, the record refutes Jones's claims of ineffective assistance of counsel that were properly presented in his § 2255 motion. Two of the claims alleging ineffective assistance of counsel were waived because they were presented for the first time in Jones's reply brief. Additionally, Jones's substantive challenges to the firearm enhancement and obstruction of justice enhancement are procedurally defaulted because they were not raised on direct appeal. Finally, Jones has failed to demonstrate that there were any substantive issues with his sentence based on his drug quantity calculation. Thus, Jones's petition for relief

1

under § 2255 is **DENIED** and the Court declines to grant an evidentiary hearing, appoint counsel, or issue a certificate of appealability.

## I.  Procedural and Factual Background

On October 17, 2014, attorney G. Scott Hayworth was appointed as counsel for defendant Angelo Jones [DE 6] in response to a criminal complaint [DE 1].  On November 13, 2014, Angelo Jones and his cousin, Paul Thornton, were indicted by a federal grand jury for conspiring to distribute heroin and oxycodone, distributing heroin, and firearms offenses.  [DE 11, Indictment].  Thompson pleaded guilty pursuant to a plea agreement with the government. [DE 28, Plea Agreement].  Count four of the indictment, which charged Jones with being a felon in possession of a firearm, was severed upon motion of the United States. [DE 32, Motion; DE 33, Virtual Order].

Jones was tried on the remaining three counts at a jury trial on February 4-5, 2015.  [*See* DE 69, Trial Transcript Day 1 (February 4, 2015); DE 70, Trial Transcript Day 2 (February 5, 2015)].  At trial, Jones testified in his own defense and denied that he sold heroin or oxycodone, assisted Paul Thornton with selling drugs, or had knowledge of any weapons in the home.  [DE 70, at 38-66, Page ID # 450-78].

On February 5, 2015, the jury convicted Jones on the two drug counts but acquitted Jones of possession of a firearm in furtherance of a drug trafficking offense. [DE 43, Verdict Form at 1-3, Page ID # 169-71]. Subsequently, the United States moved to dismiss count 4, which had been previously severed. [DE 46, Motion]. The Court granted the motion pertaining to count 4 and entered a judgment of acquittal on count 3. [DE 48, Order; DE 47; Judgment].

Prior to sentencing, the United States Probation Office conducted a presentence investigation and calculated an adjusted offense level of thirty-six. [DE 64, Presentence Report at 6-7, Page ID # 232-33]. Additionally, based on his criminal history, Jones was found to have a criminal history score of twelve and a criminal history category of V. [*Id.* at 10, Page ID # 236]. Based upon a total offense level of thirty-six and a criminal history category of V, the guideline sentencing range was between 292 and 365 months of imprisonment. [*Id.* at 13, Page ID # 239].

On May 15, 2015, sentencing was held. [DE 71, Sentencing Transcript]. Jones was sentenced to a total term of imprisonment of 240 months. [*Id.* at 18-19, Page ID # 554-55]. Jones was also sentenced to a six-year term of supervised release. [*Id.* at 19, Page ID # 555].

Jones filed notice of appeal on May 26, 2015. [DE 62]. On appeal, Jones argued that there was insufficient evidence to support his convictions, that the Court erred in attributing quantities of heroin and oxycodone to Jones for sentencing purposes, and that the sentence was procedurally and substantively unreasonable based on an erroneous drug quantity calculation. [See DE 72, Order at 2, Page ID # 561]. The United States Court of Appeals for the Sixth Circuit affirmed Jones's conviction and sentence on April 28, 2016. [*Id.* at 6, Page ID # 565].

Jones filed the present motion on April 28, 2017. [DE 76]. Jones presently argues that his trial counsel provided ineffective assistance of counsel and that there are errors pertaining to his sentencing. First, Jones alleges that his attorney provided ineffective assistance by failing to contact potential defense witnesses before trial. Second, Jones alleges that his attorney provided ineffective assistance at trial by failing to object to the introduction of certain text messages and failing to object to rebuttal testimony of Sergeant Tom Beall. Third, Jones argues that his trial counsel was ineffective for failing to object to the sentencing enhancement for obstruction of justice. Finally, Jones alleges errors at sentencing in determination of the base offense level based on drug quantities and in application of enhancements for possession of a firearm and obstruction of justice.

## II.  Standard of Review

"To prevail on a motion under § 2255, a [petitioner] must prove '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Goward v. United States*, 569 F. App'x 408, 412 (6th Cir. 2014) (quoting *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012)).

## III.  Analysis

### A.  Ineffective Assistance of Counsel

An ineffective assistance of counsel claim under *Strickland* requires that a prisoner show (1) that his "counsel's performance was deficient measured by reference to 'an objective standard of reasonableness'" and (2) "resulting prejudice, which exists where 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'" *United States v. Coleman*, 835 F.3d 606, 612 (6th Cir. 2016) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).

"To establish deficient performance, a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 521

(2003) (quoting *Strickland*, 466 U.S. at 688)). Courts have "declined to articulate specific guidelines for appropriate attorney conduct and instead have emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Id.* (quoting *Strickland*, 466 U.S. at 688) (alterations in *Wiggins*). Still, a court's review of this prong includes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Petitioner carries the burden of establishing that "'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

Prejudice results from a deficient performance when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 693).

Meeting "*Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). The standard "must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the

right to counsel is meant to serve." *Harrington*, 562 U.S. at 105. "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one" because "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Id*.

**(1) Pre-Trial Ineffective Assistance of Counsel Claims**

**a. Failure to Investigate Potential Defense Witnesses**

First, Jones alleges that his counsel was ineffective for failing to investigate and contact potential defense witnesses before trial. Specifically, Jones asserts that his attorney failed to contact Angela Mosley and John Horvack.

The law is clear that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005) (quoting *Strickland*, 466 U.S. at 691). Counsel's basic function is "to make the adversarial process work in the particular case." *Id.* (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986)).

First, Jones asserts that counsel failed to contact Angela Mosley, whom Jones described as his girlfriend. [DE 76-1, Memorandum at 6, Page Id # 590]. Mosley was supposed to testify

that she had not seen Jones with a firearm. [DE 82-1, Affidavit of Attorney G. Scott Hayworth at 2, Page Id # 623].

Counsel asserts that he conducted at least two telephone interviews with Mosley, most recently on January 23, 2015, for approximately twenty minutes. [*Id.*]. Counsel states that when Mosley was asked about whether Jones was involved in drug-related activity, Mosley asked, "Do I have to tell the truth?" and stated that she did not want to testify. [*Id.* at 2-3, Page Id # 623-24].

Alternatively, Jones asserts that Hayworth never contacted Mosley but provides no additional proof that Mosley was not contacted. Furthermore, other than stating, "This was critical because the government found drugs and guns in a residence that Mr. Jones visited instead of residing (sic)," Jones does not indicate how Mosley's testimony would have assisted his case. [See DE 76-1 at 6, Page ID # 590].

Here, the record indicates that counsel conducted a proper investigation into Angela Mosley as a potential witness by contacting her on multiple occasions and having a twenty-minute phone interview with Mosley before trial. Furthermore, counsel's decision not to call Mosley is strategically reasonable. Based on the January 23, 2015, phone interview with Mosley, counsel reasonably believed that Mosley had knowledge of Jones's involvement in drug-related activity. In fact, Mosley's testimony

could have inculpated Jones on the counts related to drug trafficking.

Additionally, Jones was acquitted on count 3, possession of a firearm during commission of a drug crime. As such, Mosley's testimony that she had not seen Jones with a firearm would do little to assist Jones's defense on the two drug counts. Ultimately, counsel provided Jones with effective assistance when he contacted Angela Mosley about being a potential defense witness and made a reasonable strategic decision not to call Mosley to testify when her testimony could have inculpated Jones on the two drug-trafficking counts.

Second, while Jones did not include the names of any other potential witnesses that his attorney failed to contact before trial in the memorandum in support of his motion, it appears that John Horvath may be an additional witness that Jones feels his attorney failed to contact. [See DE 76-1 at 6, Page ID # 590]. An affidavit from Horvath, a close friend of Jones, is attached to Jones's reply brief. [DE 86-1, Affidavit of John Horvath]. Horvath claims that he would have testified that Jones did not stay at the 70 1/2 South Main Street Residence where Jones was arrested because Jones stayed with him at another residence in Winchester, Kentucky. [*Id.* at 2, Page ID # 646]. Furthermore,

Horvath stated that he would have testified that the bullets found at the Main Street Residence belonged to him and not Jones. [*Id.*].

Still, the record indicates that Jones's attorney made multiple attempts to contact Horvath for an interview and was unsuccessful. First, counsel called Horvath's employer, DJ's Bar & Grille in Winchester, Kentucky. [DE 82-1 at 3, Page ID # 624]. The business confirmed that Horvath was an employee but stated that he was not present. [*Id.*]. Counsel claims that he left a message, identifying himself as Angelo Jones's lawyer, and asked Horvath to return the call. [Id.]. Horvath acknowledges that counsel called his place of employment and left a message but asserts that counsel did not leave his number or contact information, so Horvath presumably never returned the call. [*See* DE 86-1 at 2, Page ID # 646]. Second, counsel asserts that he sent a letter to Horvath's last known address that was returned as undeliverable. [*Id.*].

Here, counsel made a sufficient effort to contact Horvath to investigate whether he would make a suitable defense witness. Horvath acknowledges that he received a message from counsel pertaining to Angelo Jones's defense. Furthermore, counsel attempted to contact Horvath by mail and was unsuccessful.

Furthermore, Jones has failed to demonstrate how Horvath's testimony would have assisted his defense at trial. Horvath's

main purpose seems to be to refute the firearms charges, but Jones was acquitted on count 3 related to possession of a firearm during a drug crime.

Of course, Horvath may have also testified that Jones resided with him instead of at the Main Street Residence. Still, that fact, even if accepted as true, does not exculpate Jones on the drug charges considering the other evidence. As an initial matter, Horvath's testimony would conflict with Jones's own testimony at trial that Jones was homeless on July 16, 2014. [DE 70 at 55-56, Page ID # 467-68]. Furthermore, the testimony of Detectives Campbell and Beall, the testimony of Paul Thornton, and a video of a cooperating witness purchasing narcotics at 70 1/2 South Main Street confirm that Jones at least visited the residence where drugs were being sold, even if Jones did not reside at the Main Street Residence permanently. [DE 69, Testimony of Detective Campbell at 22-27; Testimony of Detective Beall at 43-50; Testimony of Paul Thornton at 116-20].

Ultimately, defense counsel conducted a reasonable investigation when he made multiple attempts to contact Horvath to determine whether he would be a favorable defense witness. Here, it is Horvath's failure to cooperate, by failing to return counsel's call, that resulted in Horvath's absence as a defense witness at trial.

In sum, Jones has failed to demonstrate that his attorney provided ineffective assistance of counsel prior to trial by failing to investigate potential defense witnesses. Counsel conducted pretrial interviews with Mosley and made multiple attempts to contact Horvath. As such, there is no proof that Horvath's "performance was deficient measured by reference to 'an objective standard of reasonableness.'" *See Coleman*, 835 F.3d at 612 (quoting *Strickland*, 466 U.S. at 688, 694).

### b. Failure to Advise Client of Government Plea Bargain

In passing, and for the first time in his reply brief, Jones appears to assert that counsel was ineffective for failing to effectively advise him of the government's plea offers. [DE 86 at 10, Page ID # 642]. But this argument is waived because it was raised for the first time in Jones's reply brief.

Jones's claim of ineffective assistance has been waived because it was not raised in his § 2255 original motion. "It is well-established that a party, including a movant in a motion under § 2255, may not raise an argument for the first time in a reply brief." *United States v. Turek*, No. 5:11-CR-29, 2015 WL 5838479, at *6 (E.D. Ky. October 6, 2015) (quoting *Hadley v. United States*, No. 1:06-CR-5, 2010 WL 2573490, at *6 (W.D. Mich. June 22, 2010)); see also Rule 2(b)(1) of the Rules Governing Section 2255 Proceedings for the United States District Courts (The motion must

"specify all the grounds for relief available to the moving party."); *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010); *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001).

Additionally, there is good reason for the rule holding that claims presented for the first time in reply briefs are waived. Rules 2 and 5 of the Rules Governing Section 2255 Proceedings for the United States District Courts only allow for (1) a motion, (2) a response, and (3) a reply. Allowing a habeas petitioner to present new claims for the first time in his reply brief undermines the adversary process because the government has no opportunity to respond to these new claims.

Of course, it is true that the Court construes pro se motions more leniently than motions prepared by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381–83 (2003). But construing pro se motions more leniently does not allow pro se petitioners to present claims for the first time in their reply brief.

Here, Jones did assert claims for ineffective assistance of counsel in his original motion. Still, Jones did not present the issue of his counsel's failure to effectively notify him of the government's plea bargains in his original motion. The government did not have an opportunity to respond to Jones's allegation because it was presented for this first time in the reply brief.

Thus, the Court will not address Jones's apparent assertion of ineffective assistance arising from counsel's alleged failure to notify him of the government's plea bargains because this claim was raised for the first time in Jones's reply brief.

**(2) Ineffective Assistance of Trial Counsel**

**a. Failure to Object to Admission of Text Messages**

Jones also claims that his attorney made numerous errors at trial that resulted in ineffective assistance of trial counsel. First, at trial, the prosecution introduced exhibits of text messages that appear to implicate Jones in drug trafficking. [DE 69 at 90-92, 102, Page ID # 346-48, 358]. Jones asserts that counsel was ineffective for failing to object to the introduction of these text messages on the basis that they could not be authenticated. [DE 76-1 at 3-4, Page ID # 587-88].

Here, Jones argues that "[i]t's almost impossible to authenticate a text message, unless your (sic) face to face (sic) texting someone." But Jones's conclusion is not supported by law. Text messaging is inherently an indirect form of communication. Rarely, if ever, do people send text messages to each other while sitting face-to-face in the same location. Thus, people rely on context cues and distinctive features of text messages to determine who sent the message, such as writing style, spelling, use of slang

or common phrases, saved phone contacts, and history of communication.

Recognizing the indirect nature of text messaging, the law allows for text messages to be used as evidence if properly authenticated. Authentication as a condition precedent to admissibility is governed by Federal Rule of Evidence 901(a) and "is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims." *United States v. Jones*, 107 F.3d 1147, 1150 (6th Cir. 1997). "Determination whether evidence is authentic is governed by Rule 104(b) of the Federal Rules of Evidence." *United States v. Kilpatrick*, No. 10–20403, 2012 WL 3236727, at *3 (E.D. Mich. Aug. 7, 2012).

First, the party seeking to introduce an exhibit must establish "a satisfactory foundation from which the jury could reasonably find that the evidence is authentic." *Forward Magazine, Inc. v. OverDrive, Inc.*, No. 1:10–cv–1144, 2011 WL 5169384, *3 (W.D. Mich. Oct.31, 2011) (quoting *United States v. Branch*, 970 F.2d 1368, 1370 (4th Cir. 1992)).

Here, there is ample evidence in the record to demonstrate a prima facie showing of authenticity of the text messages. First, Jesse Banks, a government informant who testified that he purchased drugs from Jones, said that the text messages were from Jones. [DE 69 at 90-92, Page ID # 346-48]. Additionally, the text

messages were addressed to "Low," and Jones admitted that "Lo" was his nickname. [Trial Exhibits 8, 8a, 8b, and 8c; DE 70 at 55, Page ID # 467]. Additionally, Banks referred to Jones as "Lo" during his testimony and Paul Thornton confirmed that "Lo" was Jones's nickname. [DE 69, Testimony of Jesse Banks at 88, 90, Page ID # 344, 346; DE 69, Testimony of Paul Thornton at 109-10, Page ID # 365-66]. Finally, the cell phone from which the messages were recovered was found on Jones's person during the execution of the search warrant. [DE 69, Testimony of Tom Beall at 62-63, Page ID # 318-19]. Ultimately, the government introduced sufficient evidence to lay a satisfactory foundation from which the jury could reasonably conclude that the text messages introduced into evidence were sent by Jones.

Second, upon making a prima facie showing of authenticity, the jury ultimately resolves whether the admitted evidence is what the proponent claims. *Forward Magazine*, 2011 WL 5169384, at *3 (quoting *Branch*, 970 F.2d at 1370-71). Here, once a prima facie case of the authenticity of the text message was shown by the government, it was for the jury to weigh the evidence and determine whether the messages were reliable evidence.

As a result, counsel's performance did not fall below an objective standard of reasonableness because there was no legal basis upon which Jones's attorney could have objected to the

authenticity of the text messages. Additionally, even if Jones's attorney had objected to the admission of the text messages into evidence, that objection would have been overruled. In sum, Jones's counsel was not ineffective for failing to object to the introduction of text messages at trial because the government provided sufficient evidence for authentication of the text messages and there was no legal basis upon which an objection could have been made.

### b. Failure to Object to Recall of Detective Beall

Next, Jones argues that his counsel was ineffective at trial for failing to object to recall of Detective Tom Beall, who had been present in the courtroom.

Detective Beall testified on the first day of trial. [DE 69 at 40-73, Page ID # 296-329]. Then, with Defense Counsel's permission, Detective Beall was present in the courtroom during the remainder of the trial.

Subsequently, on the second day of trial, Jones testified in his own defense. During cross-examination, the government questioned Jones about his financial resources and whether any money was found on his person when he was arrested. [DE 70 at 55-57, Page ID # 467-69]. Jones testified that he was homeless on July 16, 2014. [*Id.* at 55, Page ID # 467]. The government asked if Jones had money in his pocket when he was arrested. [*Id.* at

17

56, Page ID # 468]. Jones responded that "[he] didn't have any money." [*Id.*]. The government then asked, "You didn't have about $900 cash in your pocket?" [*Id.*]. Jones replied and acknowledged that cash was taken from him when he was arrested but said that someone else had handed him the money and that the money did not belong to him. [*Id.*].

After Jones's testimony, the government sought to recall Detective Beall for rebuttal testimony. [DE 70 at 67, Page ID # 479]. The main purpose of Beall's rebuttal testimony was to rebut Jones's statement that the money taken from his pocket during the arrest did not belong to him. [DE 82 at 5-6, Page ID # 612-13; DE 82-1 at 1, Page ID # 622].

At a bench conference before Beall's testimony, Jones's counsel asked whether Beall had remained in the courtroom, apparently to suggest that Beall's recall was improper. [DE 70 at 67, Page ID # 479]. The Court said that "rebuttal is different" and permitted Beall to testify. [*Id.*].

On direct rebuttal examination, Beall testified that he had recovered around $900 from Jones upon searching him incident to arrest. [*Id.* at 69, Page ID # 481]. The government asked Beall, "Okay, at the scene did Mr. Jones make any statement to you regarding the money that you had recovered?" [*Id.* at 70, Page ID # 482]. Beall responded, "No, sir, when he was being led out of

the police station he did." [*Id.*]. Then the government asked, "What did he say?" [*Id.*]. Before Beall could answer, defense counsel asked to approach the bench. [*Id.*].

At a bench conference, defense counsel objected to the admission of Jones's statement on the basis that the statement was not provided to the defense during discovery. [Id. at 70-71, Page ID # 482-83]. The Court sustained defense counsel's objection to admission of Jones's statement. [*Id.* at 71-72, Page ID # 483-84]. Then, Jones's counsel cross examined Detective Beall. [*Id.* at 72-75, Page ID # 484-87].

Now, Jones claims that counsel's failure to object to recall of Detective Beall amounts to ineffective assistance. But here, Jones's claim fails for three reasons.

First, Jones's counsel did express concern about the recall of Detective Beall during a bench conference. [DE 70 at 223]. The Court addressed the concern of Jones's counsel and said that "rebuttal is different." [*Id.*]. Thus, the discussion during the bench conference, while not explicitly stated as an objection, raised the issue of whether Beall's rebuttal testimony was proper and had the same practical effect as an objection to the recall of Detective Beall.

Second, as a matter of law, even if Detective Beall's presence in the courtroom violated the rule directing sequestration of

witnesses, the violation would not automatically bar Beall from testifying. "It is well-established that a violation of a sequestration order does not automatically bar a witness's testimony." *United States v. Green*, 305 F.3d 422, 428 (6th Cir. 2002). The decision on whether a witness whose presence violated a sequestration should be allowed to testify is a matter within discretion of the court. *Holder v. United States*, 150 U.S. 91, 92 (1893); *United States v. Bostic*, 327 F.2d 983, 983 (6th Cir. 1964).

Here, Detective Beall remained present with the consent of defense counsel. Additionally, Detective Beall had already testified on direct and had been cross-examined on the first day of trial. Beall's rebuttal testimony was limited to the narrow issue of the arrest and search of Jones incident to arrest. There is no indication that Beall's presence in the courtroom amounts to intentional disobedience of a sequestration order or that the government sought to profit from Beall's presence in the courtroom after his testimony. *See Green*, 305 F.3d at 428; *Bostic*, 327 F.2d at 983; *Lawson v. Palmateer*, 515 F.3d 1057, 1065 (9th Cir. 2008). As a result, even if Beall's presence in the courtroom violated a sequestration order, allowing him to testify was within the Court's discretion.

Third, after Beall began his rebuttal testimony, Jones's counsel objected to the admission of Jones's statement about money

that was found on Jones's person during a search incident to arrest. The objection was sustained, and the statement was not introduced. Thus, even if Detective Beall's rebuttal testimony was improper, the testimony did not prejudice the defendant because Beall's testimony provided no new substantive information that could be used against the defendant.

As a result, Jones's has failed to prove ineffective assistance of counsel relating to the rebuttal testimony of Detective Beall. First, the performance of Jones's counsel did not fall below an objective standard of reasonableness because counsel did raise the issue of whether Beall's testimony was proper, and the concerns were dismissed by the Court. Second, even if Beall's presence in the courtroom violated the rule sequestering witnesses, the decision to allow Detective Beall to testify was within the discretion of the Court as a matter of law. Third, Detective Beall's testimony did not prejudice Jones since Jones's statement about the money that was recovered on his person during a search incident to arrest was not admitted into evidence.

   **c. Ineffective Assistance for Failure to Impeach Government**
   **Witnesses at Trial**

In his reply brief, Jones argues for the first time that trial counsel was ineffective for failure to impeach government witnesses at trial. [DE 86 at 4-5, Page ID # 636-37]. Specifically, Jones asserts that trial counsel was ineffective for

failing to impeach witnesses Paul "Peasey" Thornton and Jesse Banks. [*Id.* at 4, Page ID # 636].

But Jones's claim of ineffective assistance for counsel's alleged failure to impeach government witnesses has been waived because it was not raised in his original § 2255 motion. See, e.g., *Turek*, 2015 WL 5838479, at *6; *Sanborn*, 629 F.3d at 579; *Crozier*, 259 F.3d at 517. Here, the government had no opportunity to respond to the allegation raised for the first time in the reply brief and the Court will not consider the claim.

### (3) Post-Trial Ineffective Assistance of Counsel

Third, Jones argues that counsel was ineffective for failing to object to a sentence enhancement for obstruction of justice. The government sought a two-level enhancement for obstruction of justice at sentencing. [DE 64 at 6, Page ID # 232]. The Court addressed the obstruction of justice enhancement at the sentencing hearing. [DE 71 at 13, Page ID # 549]. Jones's attorney provided his reasoning for not objecting to the enhancement, stating, "[A]fter review of the case law, you know, statutory law, I couldn't find any cases that indicate that [the obstruction enhancement] wouldn't be warranted in this kind of case in light of the defendant's testimony." [*Id.*].

Next, the Court asked the government, "What portion of the defendant's testimony . . . would warrant the two-level

enhancement?" [*Id.*]. The government responded, saying, "The clearest example is Mr. Jones testified under oath that he did not sell drugs. He denied selling Oxycodone and heroin. . . . [T]hat was clearly a – a material issue for the – the jury to decide, and they found him guilty of the conspiracy and distribution count[s]." [*Id.* at 13-14, Page Id # 549-50].

As a result, the Court found that obstruction of justice enhancement was warranted because the evidence at trial indicated that Jones had testified falsely about selling Oxycodone and heroin and the jury had convicted Jones on the drug counts. [*Id.* at 14, Page ID # 550]. The Sixth Circuit held that the obstruction of justice enhancement applies "if the district court '(1) identif[ies] those particular portions of defendant's testimony that it considers to be perjurious; and (2) either make[s] a specific finding for each element of perjury or, at least, make[s] a finding that encompasses all of the factual predicates for a finding of perjury.'" *United States v. Kamper*, 748 F.3d 728, 747 (6th Cir. 2014) (quoting *United States v. Lawrence*, 308 F.3d 623, 632 (6th Cir. 2002)). "Perjury is '(1) a false statement under oath (2) concerning a material matter (3) with the willful intent to provide false testimony.'" *Id.* (quoting *United States v. Watkins*, 691 F.3d 841, 851 (6th Cir. 2012)).

Here, the performance of Jones's counsel did not fall below an objective standard of reasonableness because there was no legal basis for an objection to the obstruction of justice enhancement. During his sworn testimony, Jones indicated that he had not sold Oxycodone or heroin. The jury, however, convicted him on these substantive counts. As a result, the Court found that Jones had made a false statement under oath concerning material matters at trial. [DE 71 at 14, Page ID # 550]. Thus, Jones's counsel had no good-faith legal basis upon which to object to the obstruction of justice enhancement and counsel's performance was not deficient at the sentencing phase.

### (4) Presumption of Prejudice Due to Egregious Errors

Fourth, Jones asserts that this case falls into a distinct and rare class of cases where prejudice should be presumed because counsel's errors resulted in an actual or constructive denial of assistance of counsel. *See Strickland*, 466 U.S. at 692; *United States v. Cronic*, 466 U.S. 648, 658, 658 n.24 (1984). For instance, courts have presumed prejudice when counsel was totally absent or was prevented from assisting the accused during a critical stage of the proceeding. *Cronic*, 466 U.S. at 659 n.25. Additionally, courts presume prejudice when the petitioner is denied the right to effective cross-examination. Cronic, 466 U.S. 659 (citing *Davis v. Alaska*, 415 U.S. 308 (1974)). Prejudice is

24

also presumed where counsel files an appeal but then fails to prosecute the appeal. *See, e.g.*, *Hernandez v. United States*, 202 F.3d 486, 487–89 (2d Cir. 2000).

But here, other than general and conclusory statements about counsel's egregious errors, Jones has failed to demonstrate how his counsel's assistance was so ineffective that it denied him any meaningful assistance at all. In fact, the record and transcripts of the proceedings suggest otherwise. Jones's counsel made reasonable efforts to contact defense witnesses, counsel represented Jones at all critical stages of the proceeding, counsel cross-examined government witnesses and made objections at trial, counsel made specific objections during the sentencing phase, and counsel represented Jones during his direct appeal. Ultimately, this is not one of the rare cases where prejudice may be presumed due to counsel's egregious errors.

## B. Alleged Sentencing Errors

Jones also alleges multiple sentencing errors. First, Jones claims that the enhancement for obstruction of justice was improper. Second, Jones alleges that the enhancement for use of a firearm was error. Third, Jones claims that there was an error in calculating his base-offense level due to an erroneous drug-quantity determination.

**(1) Procedural Default**

First, the challenges to the sentence based on the firearm enhancement and obstruction of justice enhancement are procedurally defaulted because they were not raised in Jones's direct appeal. Jones only raised three issues on direct appeal: (1) sufficiency of the evidence to support his conviction, (2) attribution of drug quantities for sentencing purposes, and (3) the reasonableness of his sentence based on drug quantity determination. [See DE 72 at 2, Page ID # 561].

Generally, a federal prisoner is barred from raising a claim on collateral review that he did not raise on direct appeal, unless that claim is ineffective assistance of counsel under the Sixth Amendment. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001); *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Unless there is a showing of cause and prejudice or actual innocence, a petitioner's failure to raise a claim on direct appeal results in procedural default of that claim. *See Bousley*, 523 U.S. at 621; *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013); *Peveler*, 269 F.3d at 698.

Here, Jones's claims pertaining to the firearm enhancement and obstruction of justice enhancement are procedurally defaulted

because they were not raised on direct appeal and Jones has offered no cause for failing to raise these claims on appeal.

**(2) Error in the Quantity of Drugs Attributed to Jones**

Second, Jones alleges that the Court erred in determining that his base offense level was 32 because the quantity of drugs attributed to him was not determined by the jury beyond a reasonable doubt. [DE 76-1 at 7, Page ID # 591]. But here, Jones seeks to relitigate an issue that has already been resolved on direct appeal. Additionally, the *Apprendi* line of cases do not help Jones because the drug quantity determination had no effect on Jones's statutory minimum or maximum sentence.

Jones cites *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004); and *Alleyne v. United States*, 570 U.S. 99 (2013) in support, but these cases are inapplicable to this case. In *Apprendi*, the Supreme Court held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to the jury and proven beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490. Similarly, the *Blakely* Court applied the *Apprendi* rule and held that where the facts supporting the petitioner's exceptional state court sentence were neither admitted by the petitioner nor found by the jury, the sentence violated the petitioner's Sixth Amendment right to trial

by jury. *Blakely*, 542 U.S. at 301-04. In *Alleyne*, the Supreme Court held that "any fact that increases the mandatory minimum [sentence] is an 'element' that must be submitted to the jury." *Alleyne*, 570 U.S. at 103.

Here, the prescribed statutory maximum sentence was thirty years pursuant to 21 U.S.C. § 841(b)(1)(C) and 21 U.S.C. § 851. [DE 64 at 13, Page ID # 239]. Based on a total offense level of thirty-six and a criminal history category of V, Jones's guideline sentencing range was between 292 and 365 months of imprisonment. [DE 64 at 6-7, Page ID # 232-33; DE 71 at 14, Page ID # 550]. Thus, the Court sentenced Jones to a total term of imprisonment of 240 months, well below the statutory maximum and general statutory guideline range. [DE 71 at 18-19, Page ID # 554-55]. Since the drug quantity calculation did not affect Jones's statutory maximum sentence and the sentence imposed was well below the statutory guideline range, *Apprendi* and its progeny are inapplicable here.

As such, Jones's current challenge is simply a reiteration of the sentencing challenges he brought on direct appeal. Previously, the Court held that the government met its burden of proving the drug quantity applicable to Jones by a preponderance of the evidence pursuant to *United States v. Hernandez*, 227 F.3d 686, 697 (6th Cir. 2000). [DE 71 at 7-9, Page ID # 543-45]. Subsequently, the Sixth Circuit affirmed the Court's drug quantity determination

and held that the Court's drug quantity determination did not rebut the presumption that Jones's below-guidelines sentence is substantively reasonable. [DE 72 at 4-6, Page ID # 563-65].

Ultimately, *Apprendi* and its progeny do not apply here. As a result, Jones's challenge to his sentence is an attempt to relitigate the drug quantity determination, which was upheld on direct appeal. Thus, Jones has failed to prove that his sentence was outside the statutory guidelines and Jones is not entitled to relief on this claim.

## C. Evidentiary Hearing

Section 2255 requires that a district court hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). Here, because the record refutes Jones's factual allegations and conclusively shows that Jones is not entitled to habeas relief, the Court will not hold an evidentiary hearing. *See Arredondo*, 178 F.3d at 782.

## D. Appointment of Counsel

In his motion, Jones also asks for appointment of counsel. A court may appoint counsel for an indigent petitioner "whenever the

United States magistrate judge or the court determines that the interest of justice so requires." 18 U.S.C. § 3006(a)(2)(B).

Here, the interests of justice will not be served by appointing counsel for Jones. Jones has filed both a § 2255 motion and a reply to the government's response. Thus, Jones has demonstrated that he has the resources and skill to adequately articulate his claims to the Court. Additionally, the Court finds that the record conclusively shows that Jones is not entitled to habeas relief. As a result, the appointment of counsel would be futile.

**E.  Certificate of Appealability**

Finally, "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing for constitutional claims rejected on the merits, a Defendant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller–El v. Cockrell*, 537 U.S. 322, 338 (2003). The "question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller–El*, 537 U.S. at 342. For claims denied on procedural grounds, a certificate appealability "should issue when the prisoner shows, at least, that jurists of

reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district was correct in its procedural ruling." Slack, 529 U.S. at 484.

In this case, the Court had considered the issuance of a certificate of appealability as to each of Jones's claims. Ultimately, no reasonable jurist would find the assessments on the merits debatable or wrong. Additionally, as to Jones's claims that are procedurally barred, the Court finds that no jurist of reason would find the correctness of the foregoing procedural rulings debatable. As a result, no certificate of appealability shall issue.

## IV. Conclusion

Clearly, Jones is unhappy with the outcome of his case. Still, Jones was represented by counsel at all critical stages and on direct appeal. Jones is not entitled to another bite at the apple simply because the outcome of his trial was not as he hoped.

Here, Jones has failed to demonstrate that counsel was ineffective or that there are substantive errors with his sentence. "[T]he motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Because "it plainly appears . . . that the moving party

is not entitled to relief, the [Court] must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4.

Accordingly, **IT IS ORDERED** as follows:

1) Defendant Angelo Jones's Motion to Vacate, Amend, or Correct Sentence pursuant to 28 U.S.C. § 2255 [DE 76] is **DENIED**;

2) Jones's request for an evidentiary hearing is **DENIED**;

3) Jones's request for appointment of counsel is **DENIED**;

4) Jones' request for a certificate of appealability is **DENIED**;

5) This action is **DISMISSED** and **STRICKEN** from the Court's active docket; and

6) Judgment shall be entered contemporaneously with the Memorandum Opinion and Order.

This the 17th day of October, 2018.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge